# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| BENNIE KENNEDY,  )  <br> Plaintiff,  )  <br> )  <br> v.  )  <br> )  <br> SCHNEIDER ELECTRIC f/k/a  )  <br> SQUARE D COMPANY,  )  <br> Defendant.  )  | Cause No.: 2:12-CV-122-PRC |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 40], filed on March 7, 2014, and Defendant's Motion to Strike Portions of Kennedy's Affidavit and Response [DE 47], filed on May 8, 2014. The Motion for Summary Judgment became fully briefed on May 8, 2014. Plaintiff did not file a response to the Motion to Strike, and the time to do so passed on May 26, 2014. Plaintiff's response to the Motion for Summary Judgment also asks that the Court grant Summary Judgment in his favor.

## I. Procedural Background

Plaintiff originally filed his two-count Complaint in Lake County, Indiana, Circuit Court on February 10, 2012. The Complaint alleges that Defendant Schneider Electric, Inc., who is and was Plaintiff's employer, defamed him (Count I) and interfered with an advantageous relationship (Count II) when one of its employees contacted the community college where Plaintiff taught part time. Plaintiff alleges that the employee stated that Plaintiff had been misusing Defendant's proprietary information and that this statement persuaded the community college to revoke his approval to teach.

This matter was removed to the United States District Court for the Northern District of Indiana on the basis of diversity of citizenship on March 20, 2012. On March 28, 2012, Defendants

filed a Motion to Dismiss. Judge Jon DeGuilio referred that motion to the undersigned Magistrate Judge for a Report and Recommendation on June 27, 2012. On November 16, 2012, the undersigned Magistrate Judge recommended that Judge DeGuilio deny that motion. On December 11, 2012, Judge DeGuilio issued an Opinion and Order adopting that recommendation in its entirety.

On May 8, 2013, the undersigned Magistrate Judge was advised that all non-Doe parties had filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. The Doe Defendants have been severed from this case, and this Court thus has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

Before proceeding to the merits of these motions, the Court pauses to note the poor advocacy by Plaintiff's attorney. Plaintiff's brief, a mere eight pages long, does not cite a single case. The writing is ungrammatical, and the brief does not follow the formatting requirements listed in Northern District of Indiana Local Rule 5-4. Moreover, Plaintiff's affidavit, which is attached to Plaintiff's response brief, is undated, and Plaintiff has not filed a response to Defendant's Motion to Strike the affidavit.[1]

---

[1] This isn't the first time, either. *See, e.g.*, *Brooks v. Menard, Inc.*, 2:10-CV-490-PRC, 2013 WL 6577514, at *1 (N.D. Ind. Dec. 16, 2013) ("The response brief is two pages in length. The 'Statement of Material Facts Indispute [sic]' lists no facts. Nearly every sentence has at least one spelling or grammatical error. Many sentences are incoherent. The brief wrongly cites rules and does not even cite a single case. Nor did Davis respond to [Defendant's] Motion to Strike or Motion for Summary Ruling."); *see also Kennedy v. Schneider Elec.*, 2:12-CV-122-JD-PRC, 2012 WL 7204543, at *2 n.2 (N.D. Ind. Nov. 16, 2012), *report and recommendation adopted*, 2:12-CV-122-JD, 2012 WL 6150828 (N.D. Ind. Dec. 11, 2012) ("Plaintiff's response and his brief in support are woefully inadequate. Both are riddled with typographical, spelling, grammatical, and legal errors. In addition, the brief does not include page numbers, is not double spaced, and uses 11 point Calibri font; pursuant to Northern District of Indiana Local Rule 5-4, submitted briefs must use at least 12 point font, be double spaced, and have consecutively numbered pages.").

## II. Motion to Strike

In support of his response to the Motion for Summary Judgment, Plaintiff submits his signed but undated Affidavit. Defendant asks the Court to strike it because it is undated and because it contains many inappropriate statements. Federal law sets forth the requirements for an unsworn declaration made under penalty of perjury—these include that the statement be made in a writing, that the person states "as true under penalty of perjury," and that the statement be dated. 28 U.S.C. § 1746. The absence of a date is not, in and of itself, a reason to discount an affidavit or a declaration, but courts typically excuse such an omission only when extrinsic evidence demonstrates the approximate date of signing. *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 244 (D. Md. 2012); *see also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475–76 (6th Cir. 2002); *Davis v. Wells Fargo Bank*, 685 F.Supp.2d 838, 842 (N. D. Ill.2010).

Plaintiff has offered no response to Defendant's argument, and the Court is not aware of any extrinsic evidence demonstrating the approximate date Plaintiff signed the affidavit. Accordingly, the Court strikes Plaintiff's affidavit in its entirety. *See Mitchel v. Buncich*, 2:11-CV-91-PRC, 2013 WL 275592, at *4 (N.D. Ind. Jan. 24, 2013) *motion for relief from judgment denied*, 2:11-CV-91-PRC, 2013 WL 1385522 (N.D. Ind. Apr. 4, 2013).

Plaintiff's Affidavit also includes a handful of attachments. These are marked Exhibit 1(a), Exhibit 1(b), and so on. "Exhibits that have been properly made a part of an affidavit . . . may be considered" in ruling on a motion for summary judgment. *Vukadinovich v. Bd. of Sch. Trustees of Michigan City Area Sch.*, 776 F. Supp. 1325, 1326 (N.D. Ind. 1991) *aff'd*, 978 F.2d 403 (7th Cir. 1992) (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2722) (internal quotation marks omitted). Conversely, courts generally do not consider "unsworn or unauthenticated

documents in determining a summary judgment motion . . . but may do so in the absence of objection." *Id.* (citing *Macklin v. Butler*, 553 F.2d 525, 528 n.1 (7th Cir. 1977); *Townsend v. Columbia Operations*, 667 F.2d 844, 849 (9th Cir. 1982)); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)" (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2722) (internal quotation marks omitted))).

Defendant objects to both the affidavit and to its attachments. Since the affidavit is not properly before the Court, neither are the attachments. The Court accordingly strikes all documents attached to Plaintiff's affidavit. In addition to this, the Court disregards Plaintiff's response brief insofar as it relies on the affidavit and the documents attached to it.

Defendant also asks the Court to strike the portions of Plaintiff's response brief that are not supported by proper designations or admissible evidence. The Court is able on its own to sift through which contentions in Plaintiff's brief are supported and which are improper. And, since, as will be seen below, the Court's ruling on the Motion for Summary Judgment would be the same even if this portion of Defendant's motion had never been filed, the Court denies it as moot.

### III. Defendant's Motion for Summary Judgment

#### A. Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a

4

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110–11 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l*

5

*Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249–50.

### B. Material Facts

#### *1. Plaintiff's Background*

Plaintiff holds a high school diploma. Though he has taken a handful of college-level courses, he has neither a bachelor's nor an associate's degree. He has never completed a union apprenticeship program nor has he reached journeyman status with a union.

Plaintiff is employed by Defendant Schneider Electric as a systems field service representative. Defendant hired him when it purchased Square D Companies, where Kennedy had been employed in the services division since 1988. Plaintiff repairs, maintains, and conducts start-up training on Defendant's power distribution equipment.

In addition to his work at Schneider Electric, from 2006–10, Plaintiff taught courses in electrical safety, electrical equipment maintenance, and general industrial safety at Prairie State College (PSC), a community college in Illinois. (He has also taught courses at Joliet Junior College, Lakeland College, and Eastern Illinois University.) The details of the employment relationship with PSC are unclear, but it appears that Plaintiff entered into contracts with PSC for each class individually and that there was no guarantee of future employment. In addition to teaching, Plaintiff also published a number of articles in trade magazines.

#### *2. Company Policies Regarding Outside Employment and Publishing*

Defendant is a competitive business, and it zealously protects its proprietary information. Defendant warned Plaintiff to refrain from using Square D materials in his outside activities. Likewise, Defendant warned him, as far back as 2006, that outside teaching activities needed prior approval from his immediate manager. Plaintiff also understood that he was not allowed to submit

7

articles for outside publication using Square D's name.

From time to time, Plaintiff asked Defendant if it had any objection to articles or presentations he wanted to publish. In his deposition, Plaintiff construed these requests as not so much asking permission as simply advising Defendant about his plans. Plaintiff testified that if the Company had voiced any objections to the content of his articles, he would have likely not published them.

### *3. Plaintiff's Publishing Activity*

Despite this understanding, in 2010, Plaintiff published an article in a trade publication called Fluke News Plus without first obtaining approval from Defendant. Around the same time, he also published another article about capacitor bank maintenance without prior approval. Plaintiff circulated both articles to his colleagues at work. In July 2010, Defendant's Director of Marketing for the Services Division, Timm Smith, called Kennedy and objected to the articles, apparently because of Plaintiff's failure to comply with Defendant's policies regarding prior approval. Gloria Olsen, a human resources manager, was also involved in the discussions about Plaintiff's failure to get approval for his articles.

In both articles, Plaintiff identified himself as an instructor and curriculum developer at PSC. Before reviewing the articles, Ms. Olson did not know that Plaintiff had been teaching at PSC (or anywhere else). Despite knowing that he needed approval, Plaintiff had not provided Defendant with the schedule of classes he taught each semester at PSC. Nor did he submit copies of his syllabi or course materials to Defendant for approval.

In light of this, Ms. Olson called the college on her own initiative; she testified that she did

this as part of her obligation to protect Defendant's proprietary information. She asked PSC to provide Defendant with a copy of a syllabus for any course taught by Plaintiff to ensure that proprietary information was not being misused. She made no accusation that Plaintiff had, in fact, misused any proprietary information. Indeed, she did not communicate anything else to PSC. PSC never complied with Ms. Olson's request.

### *4. PSC's Review of Adjunct Faculty Credentials*

PSC is a two-year community college that offers associate's degrees as well as technical and career certificates and continuing education. It is accredited by the Higher Learning Commission (HLC). One of the requirements for maintaining accreditation is that PSC must demonstrate to the HLC that its instructors possess academic degrees that are relevant to what they teach and are at least one level above the level at which they teach. Alternatively, instructors may satisfy this requirement by meeting a minimum threshold of equivalent experience in their relevant field.

Consistent with this, PSC instructors in the Department of Health and Industrial Technology (the department Plaintiff taught in) must meet one of the following three standards:

1. A bachelor's degree in engineering, engineering technology, industrial technology, or industrial education with an emphasis in the field taught and at least three years of successful work experience in the field;
2. An associate's degree in the field and five years of successful work experience in the field; or
3. Documented journeyman's status in the field and seven years of successful work experience in the field.

In August 2010, PSC conducted a periodic review of the teaching credentials of its adjunct faculty members. PSC did not have a record of the requisite teaching credentials for Plaintiff, and it accordingly asked him to provide the necessary documentation. Plaintiff provided PSC with his

9

contractor's license, OSHA trainer authorization, and a copy of his resume. These documents did not satisfy PSC's requirements. Plaintiff conceded in his deposition that he did not meet these qualifications. As a result, PSC revoked Plaintiff's approval to teach at PSC. This decision was made solely because of Plaintiff's failure to meet PSC's minimum requirements.

Following this decision, Dr. Marie Hansel, who was PSC's Academic Dean of the Department of Health and Industrial Technology, sent Plaintiff a letter explaining that he had not demonstrated his qualifications to teach classes in that department. The letter reiterated the requirements and explained that, if Plaintiff could produce the necessary documentation, PSC would re-evaluate his qualifications and would consider him for future teaching assignments.

### *5. Damages*

Plaintiff identified a number of categories of damages he claims he suffered as a result of Defendant's alleged defamation, specifically:

(1)  lost compensation for prospective tuition discounts his daughter might have received had she attended the College;
(2)  lost compensation at another college;
(3)  lost compensation from articles he wrote for trade magazines on behalf of Fluke Corporation;
(4)  lost compensation for teaching at PSC;
(5)  damages related to an alleged loss of reputation; and
(6)  punitive damages.

Plaintiff indicated that his request for compensation for his daughter was entirely prospective, since it was contingent on the event that she was going to go to Prairie State and that she would be eligible for a tuition discount because of Plaintiff's status. Plaintiff also claimed damages because he allegedly lost employment at another college because of his lawsuit against

10

Defendant (but not because of Ms. Olson's telephone call). He was not even teaching at that college at the time of the alleged events, and could not remember the last time he had taught there. Although the Fluke Corporation had stopped asking him to write articles, he admitted that he had no evidence that this decision had anything to do with the Company's actions. In sum, Plaintiff's alleged damages resulted from his loss of teaching approval at PSC and from the filing of this lawsuit.[2]

**C. Analysis**

Defendant seeks summary judgment in its favor on both Plaintiff's claim of defamation and his claim of tortious interference with an advantageous relationship. As a threshold matter, the parties do not dispute which state's law applies to this case, and the Court thus reaffirms that Indiana law applies to both of Plaintiff's claims. *See* DE 19 at 7, 19; DE 20 at 4; *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." (quoting *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991) (internal quotation marks omitted))).

*1. Defamation*

"A defamatory communication is one that tends to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Baker v. Tremco Inc.*, 917 N.E.2d 650, 657 (Ind. 2009) (citing *Kelley v. Tanoos*, 865 N.E.2d 593 (Ind. 2007)). Whether a statement is defamatory or not is a question of law for the Court to decide unless the communication could be interpreted in either a defamatory or non-defamatory way. *Id.* (citing *Kelley*, 865 N.E.2d 593). "To maintain an action for defamation, a plaintiff must

---

[2] In his response brief, Plaintiff's sole contention regarding the source of damages reads: "Plaintiff's pleading clearly sets forth damages in the lost [*sic*] of several classes at Prairie State College which he taught every semester for over six (6) years." Pl. Resp. Br. 7.

11

show a communication with four elements: 1) defamatory imputation; 2) malice; 3) publication; and 4) damages." *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind. 1994) (citing *Rambo v. Cohen*, 587 N.E.2d 140, 145 (Ind. Ct. App. 1992))

There are two types of defamation in Indiana: defamation *per se* and defamation *pro quod*. *Baker*, 917 N.E.2d at 657. "A communication is defamatory *per se* if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Id.* (citing *Kelley*, 865 N.E.2d 593) (internal quotation marks omitted). Moreover, in order to be defamatory *per se*, "the defamatory nature of the communication must appear without resort to extrinsic facts or circumstances." *Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind. Ct. App. 2000) (citing *McQueen v. Fayette Cnty. Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999)).

If a communication is found to be defamatory *per se*, Indiana courts have held that plaintiffs are entitled to presumed damages "as a natural and probable consequence of the *per se* defamation." *Kelley*, 865 N.E.2d at 597 (quoting *Rambo*, 587 N.E.2d at 145 (quoting *Elliott v. Roach*, 409 N.E.2d 661, 683 (Ind. Ct. App. 1980))) (internal quotation marks omitted); *Baker*, 917 N.E.2d at 657. But in suits alleging defamation *pro quod*, the plaintiff must prove special damages. *Baker*, 917 N.E.2d at 657 (citing *Kelley*, 865 N.E.2d at 597).

For communications to rise to the level of *per se* defamation, they must be "so obviously and naturally harmful that proof of their injurious character can be dispensed with." *Id.* (citing *Levee*, 729 N.E.2d at 220 (quoting *Moore v. Univ. of Notre Dame*, 968 F. Supp. 1330, 1334 (N.D. Ind. 1997))). In *Baker*, for example, the Court concluded that a statement that the plaintiff had engaged in "inappropriate sales practices" was not defamatory *per se*. *Id.* Likewise, in *Levee*, a statement that

the plaintiff was a "liar" who "favored some staff" was held to be not defamatory *per se*, but only acquired defamatory meaning in the broader context of the defendant's personal attacks against the plaintiff. *Levee*, 729 N.E.2d at 220; *see also Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 206 (7th Cir. 2013). Ms. Olson's request, which merely asked for a copy of a syllabus so that Defendant could ensure its proprietary information was not compromised, is less severe than both of these examples. The Court accordingly concludes that Ms. Olson's request was not "so obviously and naturally harmful that proof of [the request's] injurious character can be dispensed with." *Levee*, 729 N.E.2d at 220. Plaintiff's claim must accordingly be considered as defamation *pro quod.* The upshot is that Plaintiff's defamation claim "is actionable only if it cause[d] . . . special damages." *Id.*; *Kelley*, 865 N.E.2d at 597.

"A plaintiff pleading special damages due to defamation . . . must plead and demonstrate that the special damages were incurred as a natural and proximate consequence of the wrongful act." *State Farm Fire & Cas. Co. v. Radcliff*, 987 N.E.2d 121, 153 (Ind. Ct. App. 2013) *transfer denied*, 995 N.E.2d 620 (Ind. 2013) (quoting *N. Ind. Pub. Serv. Co. v. Dabagia,* 721 N.E.2d 294, 304 (Ind. Ct. App. 1999) (internal quotation marks omitted)). As laid out above, all of Plaintiff's alleged damages spring from PSC's decision not to rehire him or from his own decision to institute this lawsuit. On the subject of what caused his damages, Plaintiff's response brief mentions only that he lost income from his work at PSC. But PSC decided to revoke Plaintiff's teaching approval *solely* because it concluded that Plaintiff did not have the requisite credentials and not because of Ms. Olson's phone call. Moreover, Plaintiff has not pointed the Court to any facts that suggest that his reputation was damaged as result of Ms. Olson's request.

The alleged damages were thus not "a natural and proximate cause of" Defendant's actions.

13

*Radcliff*, 987 N.E.2d at 153 (quoting *Dabagia,* 721 N.E.2d at 304). This is fatal to Plaintiff's attempt to prove special damages, and the Court thus need not examine the other elements of Plaintiff's claim. The Court accordingly grants Defendant's Motion for Summary Judgment as to Plaintiff's claim of defamation.

### *2. Malicious Interference with an Advantageous Relationship*

As has been previously ruled in this case, malicious interference with an advantageous relationship does not exist as a tort in Indiana. *See* DE 20 at 4–5; *United Consumers Club, Inc. v. Bledsoe*, 441 F.Supp.2d 967, 982 (N.D. Ind. 2006) (noting that Indiana does not recognize the tort of interference with advantageous relationships and interpreting the claim as one for tortious interference with a business relationship). Defendant asks the Court to construe the allegation as either tortious interference with a business relationship or, if not, as tortious interference with a contractual relationship. In arguing that this is an allegation of tortious interference with a business relationship, Defendant ignores this Court's prior determination that Plaintiff's claim should be construed as tortious interference with a contractual relationship and *not* as tortious interference with a business relationship.[3] *See* DE 19 at 9; DE 20 at 6–7. Though this determination is the law of the case, *Marseilles Hydro Power LLC v. Marseilles Land & Water Co.*, 481 F.3d 1002, 1004 (7th Cir. 2007) ("The doctrine of law of the case creates a presumption against a court's reexamining its own rulings in the course of a litigation." (emphasis omitted)), the distinction is, as will be seen below, irrelevant for the purposes of this case.

The elements of a claim for tortious interference with a contractual relationship are:

---

[3] Plaintiff joins Defendant in this, stating that "Plaintiff did plead tort in relation to a business relationship via the body of the Complaint and [*sic*] pleading by Plaintiff can and does set forth interfering with a *business interest*." Pl. Resp. Br. 7.

> (1) the existence of a valid and enforceable contract;
>
> (2) defendant's knowledge of the existence of the contract;
>
> (3) defendant's intentional inducement of breach of the contract;
>
> (4) the absence of justification; and
>
> (5) damages resulting from defendant's wrongful inducement of the breach.

*Melton v. Ousley,* 925 N.E.2d 430, 440 (Ind. Ct. App. 2010) (citation omitted).

As with Plaintiff's defamation claim, the issue of damages alone is dispositive. PSC decided to revoke Plaintiff's teaching approval *solely* because he did not meet PSC's credentialing requirements. Thus, any damages Plaintiff sustained as a result were not caused by Defendant's actions but by PSC's evaluation of Plaintiff's credentials. This also wipes out any claim for tortious interference with a business relationship since a plaintiff must likewise prove damages to prevail. *See Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 124 (Ind. Ct. App. 1992). The Court therefore grants Defendant's Motion for Summary Judgment as to Plaintiff's claim of tortious interference with an advantageous relationship.

## IV. Plaintiff's Motion for Summary Judgment

Plaintiff has not filed a separate Motion for Summary Judgment, but nevertheless asks in his Response to Defendant's Motion for Summary Judgment that the Court grant Summary Judgment against Defendant and in Plaintiff's favor. Summary Judgment has been granted in Defendant's favor as to both of Plaintiff's claims. Plaintiff cannot prevail, and this latent motion is hence denied.

## V. Conclusion

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [DE 40] and **GRANTS in part** and **DENIES as moot in part** Defendant's Motion to Strike Portions of

Kennedy's Affidavit and Response [DE 47]. The Court grants the Motion to Strike insofar as it seeks to strike Plaintiff's affidavit, the documents attached to it, and those parts of Plaintiff's response brief that rely on the affidavit or its attachments. The motion is denied as moot insofar as it seeks to strike other portions of Plaintiff's response brief. The Court also **DENIES** Plaintiff's request that the Court grant Summary Judgment in his favor. The Court **DIRECTS** the Clerk to enter judgment against Plaintiff and in favor of Defendant.

SO ORDERED this 5th day of September, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record.